In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00092-CR
_____


TERRANCE ANTHONY JONES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 75th District Court
Liberty County, Texas
Trial Cause No. CR31181

**MEMORANDUM OPINION**

A jury found Terrance Anthony Jones (Jones) guilty of aggravated robbery. Jones pleaded true to three of the enhancement paragraphs alleged in the indictment, and the jury assessed punishment at sixty years of confinement. On appeal, Jones argues the trial court committed reversible error by (1) ordering appellant to remain handcuffed during the punishment phase of the trial, (2) allowing the alternate juror to remain with the jury during deliberations in the guilt

phase of the trial, (3) refusing to grant appellant's motion for mistrial when the State's witness introduced evidence that appellant had previously been in prison, and (4) instructing the jury during the punishment phase that it could consider extraneous offense evidence in spite of the trial court's previous ruling instructing the jury to disregard the only extraneous offense evidence in the record during the guilt phase of the trial. Jones also challenges the legal sufficiency of the evidence supporting the jury's finding that he used or exhibited a "real" firearm, and therefore, he argues there was insufficient evidence to prove that he committed the offense of aggravated robbery. We affirm the trial court's judgment.

BACKGROUND

L.G.[1] testified that about 5:00 a.m. on May 30, 2014, he stopped at a Valero station in Liberty County to get some water and ice on the way to work. He stated he was driving a "Ford 350 1997" that he used for his job, and the truck contained his welding machine, oxygen tanks, and tools. L.G. said he parked at one of the gas pumps in a well-lit area, he purchased water and ice, and then he was approached by a man as he was putting the water in his ice chest.

---

[1] To protect the privacy of the victim, we identify him by using initials. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

2

L.G. testified that the man was "[m]aybe 3 feet, 4 feet[]" from him and asked him for "some change." L.G. said they began to talk, then L.G. walked about fifty feet to the outside of the store where the store kept ice and the man followed L.G. The man asked L.G. where he was going and if he could have a ride. L.G. testified he did not agree to give the man a ride. L.G. explained at trial that he could see the man's face the entire time during the conversation and that the man's face was not covered. L.G. told the jury that he noticed that the man had a couple of tattoos on his arms and a teardrop tattoo under his eye.

L.G. testified he became alarmed when the man kept looking around and would not leave. L.G. explained that he feared for his life when the man showed him a "pistol." L.G. said the man "pulled his shirt up" and showed the gun to L.G. when they were standing "[a]bout 5 to 6 feet[]" apart. L.G. testified that he had previous experience being around pistols because friends "invite [him] to the shooting range and stuff[,]" and that he has fired a pistol before. L.G. explained to the jury that the gun "looked like a .9 millimeter[]" and it "was between grayish, brownish[]" with a "black grip."

L.G. testified that the man asked L.G. to give him his keys and phone. L.G. testified he "stood in shock." L.G. explained that after he gave his keys and phone

3

to the man, the man got in L.G.'s truck and drove off. At trial, L.G. identified Jones as the man who showed him the pistol and took his truck.

L.G. was shown a photo lineup, which was admitted into evidence, wherein L.G. had identified the suspect. L.G. testified that the person that he had identified in the photo lineup as the suspect did not have a teardrop tattoo in the photograph and that L.G. had handwritten the following on the lineup: "I'm 70 percent sure it's him. Maybe if I seen [sic] a more recent picture I could be more sure." According to L.G., he wrote the last sentence because the picture did not show the teardrop tattoo.

Lonnie Moon also testified at trial. Moon was previously employed as a patrol officer with the Dayton Police Department, where he was working on the date of the incident in question. Officer Moon was dispatched in the early morning hours of May 30, 2014, to a Valero gas station in Liberty County regarding a possible aggravated robbery. According to Officer Moon, dispatch informed him that he needed to check for an early '90s Ford F-350 with a welding machine in the back. Officer Moon testified that he went to the Valero gas station and interviewed L.G., but Moon was unable to locate the described vehicle. Officer Moon testified that he took L.G. home and made a written report of the incident.

Harris County Deputy Sheriff Faughtenbery also testified at trial. Deputy Faughtenbery explained that on June 2, 2014, he was called to a store location regarding a burglary of a motor vehicle. He testified that after he arrived at the location he saw someone exit a vehicle and then flee. According to Deputy Faughtenbery, a store clerk at the location brought to Faughtenbery's attention a white pickup truck that was on the premises. Deputy Faughtenbery "ran [the information on a white pickup truck that was on the premises] via the computers[,]" determined that the white pickup truck was a stolen vehicle, and dispatch confirmed it. The Deputy inventoried the vehicle and he found a wallet inside the vehicle. Inside the wallet was a Texas identification card with the name "Jones[,] Terance Anthony[.]" The wallet and a redacted copy of the photo identification card were admitted into evidence, and the redacted copy of the photo identification card was published to the jury.

Brian Chowns, a patrol officer with the Dayton Police Department, testified that he was called in to conduct a photo spread lineup on June 3, 2014. Officer Chowns explained at trial that in a photo spread lineup, the police take the victim of a crime, show the victim pictures, and then the victim will "pick out a person they recognize" from what happened to the victim. He testified that he showed a lineup of six photographs to L.G. and read the instructions on the photo lineup to

5

L.G. According to Officer Chowns, he did not have any role in preparing the photographs that were included in the photo spread lineup. Officer Chowns recalled that L.G. was able to identify one person in the lineup with "70 percent" confidence, but L.G. asked whether or not there was an updated photo. L.G. described to Officer Chowns a teardrop tattoo that was on the face of the person in the photograph he chose. On cross-examination, Officer Chowns agreed that he found it curious that the victim could identify the photograph of Jones but could only do so with seventy percent confidence.

Detective Steven Rogers with the Dayton Police Department testified that he was the officer who put together the photo lineup. He explained that he used Jones' photo in the lineup because the Harris County sheriff deputy who had located the stolen vehicle told Detective Rogers that an "ID[]" with Jones' name and photo on it had been recovered from inside the vehicle. Detective Rogers stated that he selected photographs for the photo lineup of people who looked similar. Rogers testified that he chose Officer Chowns to administer the photo lineup because he wanted an unbiased officer who did not have any knowledge of the case and that Chowns was the only officer on duty at the time that Rogers was sure did not have any knowledge of the case.

Other witnesses also testified at trial. R.M., an employee at the Valero store where the robbery allegedly occurred, testified that he provided recordings from the camera surveillance system at the store to law enforcement and the recordings were admitted into evidence. Detective Duos with the Dayton Police Department testified that he obtained the surveillance video recordings from the Valero store and transferred the recordings from a flash drive to a DVD. The DVD was admitted into evidence. Jones elected not to testify at trial.

The jury found Jones guilty of aggravated robbery. Jones pleaded true to three enhancement paragraphs as alleged in the indictment. The jury assessed punishment at sixty years of confinement. Jones filed this appeal.

HANDCUFFS

In his first appellate issue, Jones argues that the trial court committed reversible error at the punishment phase of trial by ordering that appellant be handcuffed during that phase of the trial. After the jury found Jones guilty, his trial counsel requested that Jones' handcuffs be removed during the punishment phase of the trial and the trial court denied the request. Jones contends on appeal that his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution were violated when the trial court denied Jones' request. Jones argues that "common sense would lead one to conclude that [the handcuffs] were visible

to everyone in the courtroom when Appellant was required to stand and enter a plea to the enhancement paragraphs." There were no findings on the record as to the trial court's reasoning for denying the request.

The United States Supreme Court has held that the appearance of a defendant in shackles before a jury during a trial may violate the defendant's Fifth and Fourteenth Amendment rights to due process. *Deck v. Missouri*, 544 U.S. 622, 629-34 (2005). The Court found that due process is only implicated when the jury can see the restraints. *Id.* 629-30. The Court reasoned that "[v]isible shackling undermines the presumption of innocence and the related fairness of the factfinding process[,] . . . can interfere with the accused's ability to communicate with his lawyer[]" and "participate in his own defense," and "affronts the dignity and decorum of judicial proceedings that the judge is seeking to uphold." *Id.* at 630-31 (internal quotations omitted). Notably, in *Deck* the criminal defendant objected to his shackles during the guilt phase of the trial. *Id.* at 625. In *Bell v. State*, 415 S.W.3d 278 (Tex. Crim. App. 2013), the trial court ordered the defendant to be shackled during the guilt phase of the trial. 415 S.W.3d at 279. Bell objected to the shackles arguing the shackles would be seen by the jury and deprive him of this presumption of innocence and a fair trial. *Id.* at 279-80. The

jury found Bell guilty and he was sentenced to twenty years' confinement. *Id.* at 280.

In *Bell*, the defendant asked the Texas Court of Criminal Appeals to adopt the approach in *United States v. Banegas*, in which the Fifth Circuit explained that the government has the burden of proving beyond a reasonable doubt that the jury could not see the shackles when the record is unclear whether the jury in fact saw the shackles, and because the government could not satisfy its burden, the court assumed the restraints were visible. 415 S.W.3d at 282. The Texas Court of Criminal Appeals explained in *Bell* that its prior decisions in *Long* and *Cooks* "demonstrate an appropriate unwillingness to make the factual assumption that the jury perceived a defendant's shackles in the absence of any record support." *Id.*; *see also Cooks v. State*, 844 S.W.2d 697, 723 (Tex. Crim. App. 1992); *Long*, 823 S.W.2d at 283. The Court further explained that it declined to adopt the approach taken by the Fifth Circuit in *Banegas* "[b]ecause of our own precedent to the contrary[:]"

> We are mindful that even a well-developed record on appeal may fail to establish with certainty whether the jury perceived the defendant's restraints, much less describe the extent and nature of that perception. In light of this limitation, we must strike a balance between the protection of a defendant's valuable constitutional rights and the inappropriate speculation and assumption of facts on appeal when it is unclear whether a shackling error undermined a defendant's presumption of innocence. Therefore, shackling error may rise to the

> level of constitutional error when the record reflects a reasonable probability that the jury was aware of the defendant's shackles. We do not intend to suggest that reasonable probability in this context means more probable than not; it simply requires a substantial basis supporting a conclusion that the jury perceived the defendant's restraints.

*Bell*, 415 S.W.3d at 282-83.

In the present case, Jones had already been found guilty of the charged offense when Jones objected to being shackled in the punishment phase of his trial. The record does not demonstrate whether Jones was handcuffed during the guilt phase of his trial. After the jury found Jones guilty and before the jury entered the punishment phase of the trial, Jones' attorney objected to the restraints. Accordingly, unlike *Deck* or *Bell*, where the defendant objected to being shackled in the guilt phase of his trial, we conclude that shackling of Jones during the punishment phase would not undermine the presumption of innocence.

Nevertheless, even if it was error for the trial court to order that Jones remain in handcuffs during the punishment phase, we must determine whether this error is of constitutional dimension. *See* Tex. R. App. P. 44.2(a). In determining this, we examine whether the error deprived Jones of his presumption of innocence and turns on whether the record shows a reasonable probability that the jury was aware of Jones' handcuffs. *See Bell*, 415 S.W.3d at 283. Jones' brief points to nothing in the appellate record that might indicate his handcuffs were visible to the

jury. *See* Tex. R. App. P. 38.1(i) (requiring briefs to cite to the record). On this record, we cannot conclude that there was a reasonable probability the jury perceived Jones' handcuffs. To conclude that it is reasonably probable that the jury saw or was otherwise aware of Jones' handcuffs would be entirely speculative. We disagree with Jones' contention that "common sense" would lead one to conclude that the handcuffs were visible to the jury when he stood to enter his plea to the enhancement paragraphs of the indictment. Contrary to the cases cited by Jones in support of his assertion that requiring him to stay handcuffed resulted in harm requiring reversal,[2] there is nothing in this record showing that the handcuffs were visible to the jury. Based on this record, we cannot say that there was a reasonable probability that the jury was aware of the handcuffs and therefore we find that the

---

[2] Jones relies on *Boone v. State*, 230 S.W.3d 907 (Tex. App.—Houston [14th Dist.] 2007, no pet.), and *Wiseman v. State*, 223 S.W.3d 45 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd), in support of his argument that he was harmed. In *Boone*, the Fourteenth Court of Appeals held that the trial court reversibly erred in ordering the defendant to wear handcuffs during trial because the record showed the handcuffs were visible to the jury. 230 S.W.3d at 911-13. The Court noted that the prosecutor, in response to defense counsel's objection regarding the handcuffs, stated that the armband of the handcuffs was "clearly visible[,]" and, on two occasions during the trial, defense counsel renewed his objection on the basis that the handcuffs were visible to the jury. *Id.* at 912. In *Wiseman*, the First Court of Appeals held that the defendant was harmed by the trial court's error in shackling the defendant, and the Court's conclusion was based, in part, on a statement by a bailiff outside of the jury's presence that indicated that the defendant's shackles were exposed. 223 S.W.3d at 51.

judge's error, if any, in requiring Jones to be shackled during the punishment phase was not of constitutional dimension and it was harmless. *See* Tex. R. App. P. 44.2(b) (stating that any non-constitutional error "that does not affect substantial rights must be disregarded[]"); *Bell*, 415 S.W.3d at 283-84 (explaining that error in ordering the defendant to be shackled during the guilt phase of his trial was harmless under Rule 44.2(b) because there was no "reasonable probability that the jury was aware of the defendant's shackles[]"); *see also Canales v. State*, 98 S.W.3d 690, 697-98 (Tex. Crim. App. 2003) (holding that any error in allowing appellant to be shackled during trial would be harmless because "[n]othing in the record indicate[d] that the jury ever saw or heard or was otherwise aware that appellant was wearing shackles."); *Cooks*, 844 S.W.2d at 722-23 (same where there was no evidence that the "shackles were actually seen by the jury[]"). We overrule issue one.

ALTERNATE JUROR

In his second issue, Jones argues the trial court committed reversible error by allowing the alternate juror to remain with the jury during deliberations during the guilt phase of the trial.[3] The jury charge included an instruction that "[t]he

---

[3] Prior to September 1, 2007, article 33.011(b) of the Texas Code of Criminal Procedure required alternate jurors to be discharged "after the jury retires to consider its verdict." *See* Act of May 30, 1983, 68th Leg., R.S., ch. 775 § 2,

alternate juror shall not participate in any way with the deliberations." Neither the State nor the defense objected to the trial court's instruction. After the court received and accepted the proposed jury charge, but prior to the jury entering and hearing the court's charge, defense counsel made the following objection:

> [Defense counsel]: Judge, I do have one objection I need to put on the record concerning the jury if I may do so now.
>
> THE COURT: Yes, ma'am.
>
> [Defense counsel]: The law does allow for, you know, 12 jurors and one alternate; and I would object to the alternate being in the jury room during deliberations.
> I know that in the jury charge there is a special admonition to the alternate juror that they should not participate in any way in the deliberations.
> However, I think the mere presence of a 13th person might affect or could affect the deliberations. Even though that 13th juror would potentially remain quiet, any gestures, any expressions on their face, anything such as that could be construed as an active participant in the deliberations.
> I think to err on the side of caution the 13th juror, alternate juror, be entirely sequestered away from the 12 during deliberations. If and when one of the 12 becomes disabled or unable to participate, then at that time we could address applicability of the alternate juror being there during deliberations.
>
> THE COURT: Your objection is noted and overruled. . . .

---

1983 Tex. Gen. Laws 4593, 4594 (amended 2007) (current version at Tex. Code Crim. Proc. Ann. art. 33.011(b)). Effective September 1, 2007, article 33.011(b) was amended to provide that alternate jurors "shall be discharged after the jury has rendered a verdict on the guilt or innocence of the defendant and, if applicable, the amount of punishment." Tex. Code Crim. Proc. Ann. art. 33.011(b) (West Supp. 2014).

On appeal, Jones "submits that trial counsel's objection and argument invoked the provisions of Texas Code of Criminal Procedure, Article 36.22[]" and "implicitly plac[ed] the trial court on notice that the mandatory provisions of . . . Article 36.22[] would be violated by allowing the alternate juror to retire with the jury to deliberate the issue of Appellant's guilt[.]" Article 36.22 states that "[n]o person shall be permitted to be with a jury while it is deliberating. No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." Tex. Code Crim. Proc. Ann. art. 36.22 (West 2006). According to Jones, he "pointed out the reasons why it would be such a violation by arguing that the alternate could participate by facial expressions or gestures as opposed to verbal communication, the trial court incorrectly overruled trial counsel's objection and the State did not rebut the presumption of harm."

To preserve a complaint for review, a party must present a timely request, objection, or motion stating the specific grounds for the desired ruling if such grounds are not apparent from the context of the request, objection, or motion. *See* Tex. R. App. P. 33.1(a)(1). To preserve the alleged error, Jones was required to invoke the statute in a timely manner. *Trinidad v. State*, 312 S.W.3d 23, 24 (Tex. Crim. App. 2010). Assuming Jones' objection "invoked" article 36.22, and assuming without deciding that the trial court's practice violated article 36.22

14

because it permitted an alternate juror to be with the jury while it was deliberating, on the record before us we cannot conclude that Jones was harmed by the presence of the alternate juror. As the Court of Criminal Appeals noted in *Trinidad*,[4] harm from statutory error is governed by Rule 44.2(b) of the Texas Rules of Appellate Procedure. *See Trinidad*, 312 S.W.3d at 27 & n.15. Thus, unless the error affected Jones' substantial rights, it must be disregarded. *See* Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

Jones contends that because the alternate juror was present in the jury room, harm should be presumed and that the State has the burden to rebut the presumption of harm. We disagree.

As we noted earlier, the jury charge included the instruction that "[t]he alternate juror shall not participate in any way with the deliberations." We presume the jury understood and followed the trial court's instructions in the jury charge

---

[4] In *Trinidad v. State*, 312 S.W.3d 23, 28 (Tex. Crim. App. 2010), the Court of Criminal Appeals held (1) that the presence of an alternate juror in the jury room during deliberations "does not mean that the jury was 'composed' of more than twelve members for purposes of Article V, Section 13[,]" and (2) that the alternate juror's participation in deliberations "is more usefully conceived of as an error in allowing an outside influence to be brought to bear on the appellants' constitutionally composed twelve-member juries."

15

absent evidence to the contrary. *See Luquis v. State*, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002). We need not determine whether the trial court committed reversible error by allowing the alternate juror to remain with the jury during deliberations in the guilt phase of the trial because Jones presented no evidence that the alternate juror "participated" through verbal or non-verbal means with the jurors, and therefore, he has not met his initial burden in showing harm. *See Castillo v. State*, 319 S.W.3d 966, 972-73 (Tex. App.—Austin 2010, pet. denied) (The Third Court of Appeals determined that it "need not address" whether the practice of allowing alternate jurors in the jury room violates article 36.22 because even if the practice violated the statute, the Court could not conclude that the defendant was harmed by the violation. The Court explained that, where the defendant "made no showing that the alternate jurors conversed with the regular jurors regarding the case in violation of the district court's instructions[,]" the defendant failed to meet his initial burden, and the presumption of harm did not arise.). Issue two is overruled.

MOTION FOR MISTRIAL/EXTRANEOUS OFFENSE INSTRUCTION

In his third issue, Jones contends that the trial court committed reversible error by refusing to grant appellant's motion for mistrial when the State's witness introduced evidence that appellant had previously been in prison. Prior to the

introduction of evidence or testimony by the witnesses, the defense filed a motion in limine requesting that, due to her client's "prolific criminal history[,]" that during the guilt-innocence phase of the trial "that if the state feels a door has been opened that we just approach and have a hearing outside the presence to determine the prejudicial effect and value of it." Defense counsel also noted that the defense and the State had agreed that when the officer is testifying regarding Jones' parole identification card that was located in the truck that the officer would classify it as an identification card issued by the state of Texas. Defense counsel also stated that "[i]f the parole card is admitted into evidence, it will be redacted prior to going back to the jury or if it's viewed by the jury in the jury box." The trial court responded, "We will deal with that at the time it's offered, but your request in limine is granted."

While the prosecution was questioning Detective Rogers regarding his inclusion of Jones' photograph in the lineup, the following exchange occurred:

Q. Did the photo spreads or did the photographs that you use include a photograph of a person whose name is Terrance Anthony Jones?

A. Yes, sir.

Q. Okay. There has got to be a reason that you decided to include a photograph of Terrance Anthony Jones. Is there?

A. Yes, sir.

Q. And what is that reason?

A. I spoke with the Harris County sheriff deputy who had located the stolen vehicle. Inside the stolen vehicle he located a wallet with an ID, a prison ID, inside that had Terrance Jones' name and also his photo.

. . . .

(Discussion on record at bench)

[State's counsel]: Your Honor, we thought we had instructed this witness to not mention or allude to the identification as a prison identification card; but maybe he inadvertently did it and forgot that we spoke to him about it.

I wanted to ask the court -- I don't know what she's going to ask, but an instruction to disregard that would certainly be welcome and not objected to at this particular point.

. . . .

THE COURT: It was done in passing, not heavily emphasized.

[Defense counsel]: May I make my objection, Your Honor?

THE COURT: I will allow you to, yes, ma'am.

[Defense counsel]: Your Honor, he has violated the motion in limine. Pursuant to that I'm coming up here to say that he did. It's the state's witness. He mentioned state ID.

I think the prejudicial effect of that outweighs any probative value of his testimony. Not only am I going to object that he violated the rules of the motion in limine, I will ask the jury to disregard and also ask for a mistrial, Judge.

I do not think that is something that can be cured in a request to disregard that from the jury. It's going to be in the testimony. They have the perfect right to request that testimony while they are back there deliberating.

18

It will be in there regardless if it was a passing comment or not. It's part of the record now.

. . . .

THE COURT: Are you asking the court to instruct the jury to disregard?

[Defense counsel]: I can only request that you as the judge request the jury to disregard that last comment made by the state's witness.

. . . .

THE COURT: I am going to instruct the jury to disregard. Consider me that I am going to instruct at your request and at the request of the defense I'm going to instruct the jury to disregard any mention of the character of the identification found in the vehicle. . . .

. . . .

(Discussion at bench concluded)

THE COURT: Ladies and gentlemen of the jury, please disregard any statement by this witness as to the character of the ID allegedly found in the vehicle. Totally disregard it.
Do not consider it for any purpose. It's not competent evidence. It should not have been stated. So, totally disregard it.

[Defense counsel]: Judge, now that you have sustained that objection my third objection is I move for a mistrial because it is such an egregious glaring omission by the state that not only violates the motion in limine but it violates my client's constitutional right to have a fair trial based solely on the evidence in this case, that the prejudicial effect of that will greatly outweigh the probative value of anything else, and that the jury will have the right and there is nothing the court can do to prevent them from having that read back to them during deliberations. Therefore, I ask for a mistrial.

19

THE COURT: Overruled. Proceed.

We review a trial judge's denial of appellant's motion for mistrial under an abuse of discretion standard. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). We will uphold the trial court's ruling as long as it is within the zone of reasonable disagreement. *Coble*, 330 S.W.3d at 292; *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009).

A mistrial is an extreme remedy, and "[o]nly in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). "A mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Id.* (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). "Therefore, a mistrial should be granted only in cases where the 'reference was clearly calculated to inflame the minds of the jury or was of such damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds.'" *Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009) (quoting *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998)). Otherwise, sound discretion normally requires the trial judge to consider less drastic alternatives. *Torres v. State*, 614 S.W.2d 436, 442 (Tex. Crim. App. 1981).

"[E]rror will not necessarily be reflected in every unresponsive answer by a State's witness which implicates a reference to the fact that a defendant has been . . . incarcerated in the penitentiary[,] [and,] [e]ven where such prejudicial information is inadvertently placed before a jury, the general rule is still that an instruction by the trial judge to the jury to disregard such answer will be sufficient to cure any unresponsive answer." *Tennard v. State*, 802 S.W.2d 678, 685 (Tex. Crim. App. 1990); *see also Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) ("Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer, even one regarding extraneous offenses."). We presume the jury followed the trial court's instruction to disregard testimony in absence of evidence that it did not. *See Ladd*, 3 S.W.3d at 567 (quoting *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987)).

Assuming Rogers' reference to Jones' prison identification card improperly referred to extraneous offenses and a prior incarceration, the record before us indicates that such reference was brief, unsolicited, and followed by a prompt instruction from the trial court to disregard. The State's question does not appear to have been designed to elicit the non-responsive answer, and appellant does not contend otherwise. Nothing in the record suggests the answer to the question was calculated to inflame the minds of the jury. *See Wilson v. State*, 90 S.W.3d 391,

21

395 (Tex. App.—Dallas 2002, no pet.) ("The witness's reference to [the defendant's] previous incarceration was not so calculated to inflame the minds of the jury . . . ."). Nor was the statement of "such damning character" that it "would be impossible to remove the harmful impression from the jurors' minds[]" through an instruction to disregard. *See Young*, 283 S.W.3d at 878; *Ladd*, 3 S.W.3d at 567; *Wilson*, 90 S.W.3d at 395. Furthermore, the trial court directed the jurors to disregard that portion of Rogers' answer. There is nothing in the record to indicate the jury did not follow the trial court's instructions. Accordingly, we conclude the trial court did not abuse its discretion in denying appellant's motion for mistrial. Issue three is overruled.

In his fourth issue, Jones maintains that the trial court committed reversible error by instructing the jury that it could consider extraneous offense evidence "in spite of the previous order to disregard the only extraneous offense evidence in the record during the guilt phase of the trial, to-wit: that Appellant had been in prison." The jury charge in the guilt phase included the following instruction:

> 7. <u>EXTRANEOUS CRIMES OR BAD ACTS</u>
> You are instructed that if there is any evidence before you in this case regarding the Defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such other offense or offenses, if any, and even then you may only consider the same in determining the motive, opportunity,

intent, preparation, plan, knowledge, or identity in connection with the offense, if any, alleged against him in the indictment and for no other purpose.

We review a challenge to a jury charge using a two-step process. *See Sakil v. State*, 287 S.W.3d 23, 25-26 (Tex. Crim. App. 2009). First, we must determine whether the jury charge contained an error. *Id.* at 25. Second, if it does contain an error, we then evaluate whether the error was harmful so as to constitute reversible error. *Id.* at 25-26. To determine whether there was error in the charge, we consider the charge "as a whole instead of a series of isolated and unrelated statements." *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995).

According to Jones, "while appellate courts have said that the jury can be instructed to disregard what they have already heard, when the final instructions from the court tell them that they can consider the evidence, the jurors are going to do so in spite of the previous conflicting order." Jones argues that although the trial court's initial instruction to ignore the evidence regarding Jones' prior incarceration rendered it harmless, "the jury charge told the jury to ignore that instruction, consider the evidence and essentially allowed the jury to consider Appellant to be a criminal generally, thus, compounding the harm to Appellant." Jones concedes he did not object to the charge at trial, and therefore he must show that he suffered egregious harm as a result of such error in order to have his

conviction reversed. *See Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006); *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). As stated above, we presume the jury followed the trial court's instruction to disregard the testimony in absence of evidence that it did not. *See Ladd*, 3 S.W.3d at 567. On this record, we cannot say that Jones suffered egregious harm nor can we conclude that, because of the complained-of jury instruction, the jury ignored the trial court's oral instruction to disregard the testimony of Detective Rogers when he referenced the ID as "a prison ID." Issue four is overruled.

LEGAL SUFFICIENCY

In his fifth issue, Jones challenges the legal sufficiency of the evidence supporting the jury's finding that appellant "used or exhibited a real firearm, and therefore, there was insufficient evidence to prove that appellant committed the offense of aggravated robbery." Jones argues that the evidence is legally insufficient to support the finding because L.G. was uncertain the object around Jones' waist was a real firearm, no weapon was found when L.G.'s vehicle was recovered by law enforcement, and Jones did not make verbal threats or point the weapon at L.G. but only showed L.G. the handle of something.

24

Under a legal sufficiency challenge to the evidence in support of a criminal conviction, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We give deference to the jury's responsibility to fairly resolve conflicting evidence, to weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13.

A person commits aggravated robbery if he commits robbery and uses or exhibits a deadly weapon. Tex. Penal Code Ann. § 29.03(a)(2) (West Supp. 2014). A firearm, by statutory definition, is a deadly weapon. *Id.* § 1.07 (a)(17)(A) (West 2011). Where the State alleges the use of a firearm in a charge of aggravated robbery, it must prove beyond a reasonable doubt that the weapon used was a firearm. *Gomez v. State*, 685 S.W.2d 333, 336 (Tex. Crim. App. 1985). The indictment alleged that Jones "did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place [L.G.] in fear of imminent bodily injury or death, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm[.]"

L.G. testified that Jones lifted up his shirt and showed L.G. a pistol that was around Jones' waist and that Jones asked L.G. for his keys and phone. At trial, when L.G. was asked to describe the pistol, L.G. answered: "It looked like a .9 [sic] millimeter. It was between grayish, brownish. It had a black grip." L.G. stated that although he did not own a pistol he had previous experience being around pistols and that he has fired a pistol before. When asked on cross-examination if he could "say with 100 percent accuracy whether or not that was a real pistol or not," L.G. answered that "[i]t looked pretty real." However, L.G. acknowledged that although it looked "pretty real" and in his mind it was "real[,]" he could not testify that it was a real gun. L.G. explained that he became fearful of Jones when Jones showed him the pistol, and that L.G. feared for his life and believed that Jones would cause him to die or cause him bodily injury. L.G. further testified that he only gave the keys and phone to Jones because Jones was armed with a pistol.

"Testimony using any of the terms 'gun,' 'pistol,' or 'revolver' is sufficient to authorize the jury to find that a deadly weapon was used[]" in an aggravated robbery. *Wright v. State*, 591 S.W.2d 458, 459 (Tex. Crim. App. 1979). "Absent any specific indication to the contrary at trial, the jury should be able to make the reasonable inference, from the victim's testimony[,] that the 'gun' [that] was used

26

in the commission of a crime, was, in fact, a firearm." *Cruz v. State*, 238 S.W.3d 381, 388 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

With respect to the effect of L.G.'s inability to definitively testify that the gun was real, Jones cites to *Redwine v. State*, 305 S.W.3d 360, 366-67 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd), to argue that L.G.'s testimony on this issue renders his identification of the gun as a firearm insufficient. In *Redwine*, the Fourteenth Court of Appeals held that "[i]f . . . the sole witness is unsure and there are no other connecting or corroborating facts or circumstances[,] the jury is left without evidence upon which to translate unrelieved uncertainty into belief from the evidence beyond a reasonable doubt." *Redwine*, 305 S.W.3d at 367 (quoting *United States v. Murray*, 527 F.2d 401, 410 (5th Cir. 1976)).

In *Porter v. State*, 601 S.W.2d 721, 723 (Tex. Crim. App. [Panel Op.] 1980), the Court of Criminal Appeals stated:

> The complainant testified that appellant displayed a pistol. Appellant attempted to discredit this testimony, but it was for the jury as finder of fact to weigh its credibility. We decline appellant's invitation to require, where no weapon has been recovered, expert corroboration that that which a complainant describes as a pistol is in fact a pistol.

*Porter*, 601 S.W.2d at 723. "Where the witness has positively identified the weapon as a pistol, we do not believe such testimony is an unfounded conclusion or that it is required that [the witness] have seen the trigger, handle or cylinder or

27

other indicia of a gun in order to support the conviction of the use of a deadly weapon, to wit, a firearm." *Riddick v. State*, 624 S.W.2d 709, 711 (Tex. App.—Houston [14th Dist.] 1981, no pet.).

Absent any specific indication to the contrary at trial, the jury could have made a reasonable inference from the victim's testimony that the "gun" or "pistol" that L.G. said was used in the commission of the crime, was, in fact, a firearm. From appellant's display of the weapon around his waist, the jury could rationally infer both that the weapon was a firearm and that it was used by appellant to reduce the likelihood of resistance to his demands. *See McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000); *Riddick*, 624 S.W.2d at 711. The jury could also rationally conclude, based upon the testimony of L.G., that the firearm was exhibited during the robbery. *McCain*, 22 S.W.3d at 503. After viewing the evidence in the light most favorable to the verdict, we conclude the evidence was sufficient for a jury to find beyond a reasonable doubt that appellant committed aggravated robbery with a firearm. Issue five is overruled. Having overruled all of appellant's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

28

Submitted on August 6, 2015
Opinion Delivered November 12, 2015
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.